**Opinion filed June 6, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00350-CV
_____

## IN THE INTEREST OF J.E.T. AND Z.D.T., CHILDREN

**On Appeal from the 446th District Court**
**Ector County, Texas**
**Trial Court Cause No. E-16-057-PC**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court, based upon the jury's verdict, terminated the parental rights of the mother of J.E.T. and Z.D.T. The mother filed a notice of appeal. In four issues on appeal, she challenges the legal and factual sufficiency of the evidence. We affirm.

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2018). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true.

*In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. FAM. § 161.001(b).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

After being instructed in accordance with Section 161.001(b), the jury answered the questions posed in the trial court's charge to the jury and determined that Appellant's parental rights should be terminated. The jury charge contained instructions on four of the acts listed in Section 161.001(b)(1)—those found in

subsections (D), (E), (N), and (O).  Specifically, the trial court instructed the jury that, for Appellant's rights to be terminated, the jury must find by clear and convincing evidence that Appellant had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being; that Appellant had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being; that Appellant had constructively abandoned the children; and that Appellant had failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the children, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of their removal from Appellant for abuse or neglect.  With respect to the children's best interest, the trial court listed some factors for the jury to consider and instructed the jury that, to terminate Appellant's rights, clear and convincing evidence must have proved that termination would be in each child's best interest.  *See* Fam. § 161.001(b)(2).  In the order of termination, the trial court found that termination of Appellant's parental rights would be in the best interest of the children, but it did not enter any specific findings under Section 161.001(b)(1).

In her first and second issues on appeal, Appellant contends that the evidence is legally and factually insufficient to support the trial court's finding with respect to the children's best interest.  In her third and fourth issues, Appellant contends that the evidence is legally and factually insufficient to support a finding under subsection (O) because the Department did not make reasonable efforts to help Appellant, who was a young mother, comply with the court-ordered provisions. *See id.* § 161.001(b)(1)(O), (d).

The record shows that the Department had previously been involved with Appellant, both as a child and as a parent.  The children were removed from the

3

mother in 2016 after the Department received two intakes for neglectful supervision less than five weeks apart. At that time, J.E.T. was three years old, and Z.D.T was two years old. The first intake occurred when J.E.T. was found walking alone outside of Target. A woman stopped and took him inside the store, and the police were summoned. Appellant showed up at the Target over an hour later. She had been taking a shower at her apartment when J.E.T. wandered off. He had crossed a busy street between the apartment complex and the back of the Target. Appellant told a police officer that she had asked a friend to watch the boys while she took a shower. After the friend denied being asked to watch the children, Appellant admitted to the officer that she had lied and that J.E.T. had been playing in a grassy area at the complex, which could not be seen from Appellant's apartment. The officer indicated that the area was a dangerous, busy area for a three-year-old to be left alone.

The next month, a paternal relative brought the children to the police station because they were wandering around the apartment complex and Appellant was not there. When Appellant arrived at the police station, she explained that she was ill earlier that day and had had to go to the hospital. She left the children in the care of a fifteen-year-old runaway boy who had been staying at the apartments for about two weeks. Appellant knew the boy only by his nickname. The children were returned to the mother at that time but were subsequently removed during the Department's investigation because of Appellant's ongoing pattern of neglectful supervision.

Appellant was only twenty-one years old at the time of trial; she was fifteen years old when she gave birth to J.E.T. The evidence reflects that Appellant initially made significant progress on her family service plan, but then "things went downhill." Appellant admitted that she had smoked marihuana while this case was pending below. She had also tested positive for marihuana, cocaine, and

methamphetamine in open court during a prior hearing. Appellant failed to maintain stable housing, failed to complete individual counseling, failed to obtain a driver's license, failed to complete "outpatient substance abuse" as required by her family service plan, and continued to be involved in relationships in which domestic violence was a problem. Additionally, Appellant was on probation for the felony offense of forgery of a financial instrument, and she was not complying with the terms and conditions of her community supervision. Thus, at the time of trial, she was subject to revocation.

The foster mother testified about the filthy condition of the children, their many bad behaviors, and their fear of car seats at the time of removal. She also explained how the children's behaviors had improved in foster care. According to the foster mother, the children used to ask about Appellant occasionally and sometimes got upset that they could not stay with her at the end of visitation. However, J.E.T. would stress over the visits and would have a bad day at school on the day after visitation. Due to the positive drug test in open court in May 2017, Appellant, at the time of trial, had not visited the children in approximately one year. The children had adjusted and rarely asked about Appellant anymore.

The children's guardian ad litem, a CASA volunteer, testified that, although Appellant loved her children, she showed that she was unable to make the right decisions for her children. The CASA volunteer recommended that Appellant's parental rights be terminated. The licensed professional counselor that counseled Appellant did not believe that the children should be returned to Appellant. A supervisor for the Department testified that termination of Appellant's parental rights would be in the children's best interest. The supervisor believed that, despite the Department's attempts to help Appellant, she continued to be a danger to the children. The children's attorney ad litem believed that termination of Appellant's

5

parental rights would be in the children's best interest and that the children would be in danger if returned to Appellant.

The Department's goal for the children was termination of Appellant's parental rights and adoption by a nonrelative. A foster parent that had a good relationship with the children through their placement foster parents wanted to adopt the children. Although Appellant loved and was bonded with her children, she was unable to provide a safe and stable environment for them.

Appellant first challenges the legal and factual sufficiency of the evidence to support the finding that termination of her parental rights would be in the best interest of the children. We note that the trier of fact is the sole judge of the credibility of the witnesses at trial and that we are not at liberty to disturb the determinations of the trier of fact as long as those determinations are not unreasonable. *J.P.B.*, 180 S.W.3d at 573. We hold that, based on clear and convincing evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of Appellant's parental rights would be in the best interest of both children. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the children (who were too young to express a desire); the emotional and physical needs of the children now and in the future; the emotional and physical danger to the children now and in the future; the parental abilities of Appellant and of the person that wishes to adopt the children; the Department's plans for the children; Appellant's inability to provide a safe home for the children; Appellant's failure to keep her children safe; the condition of Appellant's residences; the stability of the adoptive home in which the Department plans to place the children; Appellant's continued drug use; Appellant's violations of the terms and conditions of her community supervision, for which she could be incarcerated at any time; and the repeated occurrence of domestic violence between Appellant and the men in her life, we hold that the

evidence is sufficient to support the finding that termination of Appellant's parental rights is in the best interest of both children. *See id.* We overrule Appellant's first and second issues.

Appellant next challenges the legal and factual sufficiency of the evidence to support a finding under subsection (O). She does not assert that she complied with all of the provisions of her court-ordered service plan. Instead, she complains that the Department did not make reasonable efforts to help her comply. We disagree. The record reflects that the Department attempted to help Appellant but that she continued to make choices detrimental to her ability to have the children returned to her. Furthermore, Appellant did not present evidence to prove by a preponderance of the evidence that she was unable to comply with the provisions of her service plan and that she had made a good faith effort to comply and had been unable to comply due to no fault of her own. *See* FAM. § 161.001(d) (providing that termination is not permitted pursuant to subsection (O) if the parent proves by a preponderance of the evidence that (1) the parent was unable to comply and (2) the parent made a good faith effort to comply and the failure to comply is not attributable to any fault of the parent).

Moreover, we note that Appellant does not complain on appeal that a finding under subsection (D), (E), or (N) is not supported by the record. *See* FAM. § 161.001(b)(1). Under subsection (D), the environment of the child must be the source of endangerment to the child's physical or emotional well-being. *In re D.T.,* 34 S.W.3d 625, 632 (Tex. App.—Fort Worth 2000, pet. denied). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.,* 338 S.W.3d 29, 33 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of

conduct by the parent is required. *D.T.*, 34 S.W.3d at 634; *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Drug use may constitute evidence of such endangerment. *Id.* Domestic violence may also constitute evidence of endangerment. *C.J.O.*, 325 S.W.3d at 265.

Here, the record contains clear and convincing evidence to support at least two of the findings under Section 161.001(b)(1). The jury and the trial court could reasonably have formed a firm belief or conviction that Appellant failed to comply with the provisions of her court-ordered service plan and that Appellant had engaged in conduct that endangered the children's physical or emotional well-being. Consequently, the evidence is legally and factually sufficient to support findings under Section 161.001(b)(1)(E) and (O). We overrule Appellant's third and fourth issues.

Because a finding that a parent committed one of the acts listed in Section 161.001(b)(1)(A)–(U) is all that is required and because the evidence is sufficient to support findings under subsections (E) and (O), we need not address any finding that may have been made pursuant to subsections (D) and (N). *See* TEX. R. APP. P. 47.1.

We affirm the trial court's order of termination.


June 6, 2019                                       JIM R. WRIGHT

Panel consists of: Bailey, C.J.,              SENIOR CHIEF JUSTICE
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.